## BARR v. COX.

No. 28373.   Oct. 11, 1938.

T. Austin Gavin and Geo. L. Sneed, Jr., for plaintiff in error.

Hickman & Ungerman, for defendant in error.

CORN, J. This is an appeal by plaintiff in error from a judgment rendered against him in the district court of Tulsa county in an action for an accounting brought by defendant in error. For convenience the parties will be referred to as in the trial court.

In 1926, plaintiff and defendant entered a joint venture to purchase town lots, erect houses thereon and sell same, and to share the profits therefrom. Six lots were acquired and six houses erected. June 29, 1936, plaintiff filed suit alleging four pieces of this property had been settled for, but that final settlement had not been made on the other two, and asked for accounting and $1,600 money judgment as half the profits.

Defendant filed motion to require plaintiff to make more definite and certain by stating: (1) Whether agreement was oral or written, and if written, to attach copy of agreement. (2) Whether profits were to be computed upon each house constructed, or upon the entire enterprise. (3) What were the rights and interest in the profit of the four lots mentioned as previously settled between the parties. (4) Whether plaintiff had been adjudged a bankrupt between date of entering agreement and date of suit, and if he had listed as an asset this money claimed to be due from defendant. The court allowed the first two grounds and overruled the third and fourth.

Plaintiff filed amended petition, to which defendant demurred and was overruled, and defendant filed answer and cross-petition, claiming $50 due and unpaid on note given by plaintiff. In answer defendant alleged: (1) There were no profits, but a loss on entire adventure; (2) the agreement was to compute the profits or loss on basis of entire transaction; plaintiff had been adjudged a bankrupt, but had not listed his interest in this joint adventure as required and so was not the real party in interest, right to recover, if any, belonging to trustee.

Defendant's demurrer to plaintiff's evidence was overruled, and the court took the case for consideration. Thereafter the court rendered judgment for plaintiff for $1,192.76. Defendant, in asking reversal of this judgment, makes ten assignments of error, which are submitted under three propositions.

Defendant first contends a bankrupt who omits to schedule and withholds knowledge of such claim as is here sued upon, cannot, after obtaining a discharge of his debts, assert title to such claim and maintain an action thereon in his own right.

Defendant cites numerous cases upon this point from the courts of other states, and relies particularly upon Rand v. Iowa Cent. Ry. Co., 89 N. Y. S. 212. In that case the New York court held that, although title to a claim, under these circumstances, might remain in the bankrupt, he held the claim only as a trustee, the equitable title passing to the creditors, and the custody and control passed to the court to be admin-

istered by a trustee to whom legal title passed upon his appointment.

However, the decision in the Rand Case, supra, relied upon by defendant, was, as counsel for defendant concede, later reversed by the New York Court of Appeals (Rand v. Iowa Cent. R. Co., 186 N. Y. 58, 78 N. E. 574). In overruling the earlier decision the New York court said:

"* * * While the concealment of any property on the part of bankrupt must be deemed a reprehensible act as towards his creditors, it by no means follows that such concealment has any bearing upon the question as to whether the bankruptcy proceedings have gone far enough to divest the bankrupt of title. In our judgment the proceedings in the case of the plaintiff had not progressed sufficiently to deprive him of the right to maintain an action in his own name in the state court upon the claim in suit. The Bankruptcy Act of July 1, 1898 (30 Stat. 565, c. 541, sec. 70, U. S. Comp. St. 1901, p. 3451) provides that the trustee of the estate of a bankrupt upon his appointment and qualification shall be vested by operation of law with the title of the bankrupt as of the date he was adjudged bankrupt. It is plain that this provision can never become effective until a trustee in bankruptcy shall have been appointed. Here none was appointed; hence the conditions did not exist which were requisite to render this provision of section 70 operative."

In the opinion the New York court further said:

"So here the plaintiff's title to the chose in action, which is the basis of the present suit, did not pass out of him in the bankruptcy proceedings, since no trustee was appointed to whom it could pass."

In the case at bar no trustee was ever appointed, the bankruptcy proceedings being a "no assets" proceeding. The defendant claims plaintiff's pleading of lack of assets prevented the appointment of a trustee. The bankruptcy proceedings were pending in 1931. At that time it was problematical whether there was to be a profit or a loss on this adventure. No profits had accrued and, in fact, it seemed more probable a loss would result. At that time there was no debt owing plaintiff. There was only a hope that profits would result from this business adventure.

Collier on Bankruptcy (13th Ed.) vol. 2, sec. 70, page 1641, says:

"The trustee only acquires such property as belonged to the bankrupt at the time the petition was filed. Property not then owned but acquired after the adjudication, and before the discharge, does not vest in the trustee, but becomes the bankrupt's, clear of the claims of creditors, save those after the commencement of the proceedings or those who, for statutory reasons, are not affected by the discharge. Property acquired between the filing of the petition and the adjudication is subject to the same rule as after-acquired property and belongs to the bankrupt. The same is true as to property which the bankrupt only hopes or expects to acquire. * * *"

Since there was no debt owed plaintiff in 1931, and all plaintiff had was expectation of sharing in the profits if any accrued, we cannot support the defendant's argument that plaintiff cannot sue upon this claim by reason of being barred because of not scheduling same in the bankruptcy proceedings.

Defendant's second proposition is: The contract sued on was not divisible, and the trial court's judgment, allowing recovery on the theory there had been a modification of the contract disposing of four of the six properties involved, was not supported by and was contrary to the clear weight of the evidence.

After hearing all the evidence the trial court found the parties had settled in four of the six transactions. The property known as the Harrison house was sold at a profit and the parties divided the profit at that time.

Regarding the Taylor property, the evidence, while conflicting, showed the buyer died. The property was then taken back by defendant, who quieted title in himself, rented the property from time to time without consulting plaintiff or accounting for rents received, and later sold the property without consulting plaintiff. The evidence respecting this entire transaction certainly tends to show the parties had reached an agreement which brought to a close their joint adventure on this Taylor property in 1929. Considering all the facts and circumstances, the trial court was amply justified in concluding the parties had brought about a modification of their agreement.

On what was known as the Bruce home place, the records showed a profit of $456.50, earned in 1929. On this, as on the other property mentioned, the profit was divided at that time and was not held back to await the outcome of the transactions regarding the other properties.

The fourth transaction involved what was referred to as the Bruce rent house.

It appears this property was settled for about the time of settling the deal involving the Harrison and Bruce properties. The court's finding that there had been a settlement of the four properties mentioned is further strengthened by consideration of defendant's admissions of conduct regarding these four named transactions.

The defendant testified there was no subsequent agreement between himself and plaintiff after their original contract. However, the evidence in respect to his manner of handling the first four transactions is sufficient to support the trial court's finding that the parties modified their original agreement and conducted themselves accordingly.

12 Am. Jur. 1006, section 427, states as follows:

"Clearly, a parol modification of a contract agreed to by the parties is proper where the original contract was by parol. (Citing Walker v. Johnson, 96 U. S. 424, 24 L. Ed. 834.) It is also competent for the parties to a contract to vary its terms by a subsequent course of dealing."

The defendant's final proposition is the trial court erred in determining the amount of profit realized on the Nichols property. The court found there was $1,175.31 profit on the Nichols house. The testimony of both Barr and Nichols showed Nichols to have paid the full price of $3,500. It was shown the defendant received $880 from Green, $90 from Rader, and a $22.50 gas refund, in all a total of $4,492.50.

Credits allowed for charges amounted to $3,317.19, accepting defendant's statement as correct. This, deducted from the total received, leaves a net profit of $1,175.31, as found by the trial court. Defendant was entitled to $50 deduction on plaintiff's unpaid note, and this was allowed by the trial court. The profit on the Keith property was admitted to be $1,310.22. Added to $1,175.31, there is shown a profit of $2,485.53, half of which for defendant's part would amount to $1,192.76, for which amount the court rendered judgment.

No errors appearing in the findings and judgment of the trial court, the judgment is affirmed.

The plaintiff having asked judgment on the supersedeas bond executed herein, such judgment is accordingly rendered.

OSBORN, C. J., and PHELPS, GIBSON, and HURST, JJ., concur.